# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT PADUCAH
# CIVIL ACTION NO. 5:13-CV-P126-R

**MARVELL IVAN LOWE et al.**                                      **PLAINTIFFS**

**v.**

**DANIEL THOMAS et al.**                                             **DEFENDANTS**

## MEMORANDUM OPINION

Plaintiffs, Marvell Ivan Lowe and Marcus Russell, filed a *pro se*, *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons set forth below, the action will be dismissed.

## I. SUMMARY OF CLAIMS

Plaintiff Lowe sues Fulton County Detention Center (FCDC) Jailer Ricky Parnell and Captain Thomas in their individual and official capacities. Plaintiff Lowe alleges that on or about June 3, 2013, Defendant Thomas came to the cell and ordered everybody to unload a truck. Plaintiff Lowe states that he and Plaintiff Russell were under a doctor's care. According to Plaintiff Lowe, Defendant Thomas warned/threatened them that if they could not work they "would be put on the 200 block of the jail. This place is set up for persons with high classifications . . . many for fighting and other problems." Plaintiff Lowe states that Defendant Thomas continued to threaten him and others "when he came in forcing work on inmates." Plaintiff Lowe states that he was given a laundry job and then told that he would also be the night floor person and that they needed him to temporarily help in the mornings as a cart person "passing out trays and picking them up as well as being responsible for the count of sporks and trays." He states that he has continued to do all of these jobs. He states, "I feel that Daniel

Thomas is using fear and intimidation to force me to work, and causing overworking by threats and intimidation."

Plaintiff Lowe further alleges that on June 20, 2013, he informed Defendant Thomas in writing and verbally "about persons in the cell block using racist remarks and being discrimatory [sic] and I had got into a confrontation with several of them and I felt that a fight may ensue, so I asked to be moved." He states that Defendant Thomas told him that he would move those causing the problems, but he actually only moved one inmate out "and left all others together to continue these acts." Plaintiff Lowe states, "I feel that my request to be in a safe environment was ignored and I was left in a high risk potentially dangerous situation."

Next, Plaintiff Lowe alleges that on July 1, 2013, Officer Ronnie Fair came into the cell block at approximately 10:30 a.m. and woke him by yelling at him that he should get his stuff ready to go to isolation if he could not tell Officer Fair where the mop heads were. He further alleges that two days later Officer Fair came by the laundry room at approximately 11:30 p.m. grabbed his laundry cart, tipped it almost over, and said "'f_ck your laundry!" Plaintiff Lowe states that he believes he is being harassed and intimidated and that he fears for his safety.

Plaintiff Lowe attaches to his complaint, among other things, a letter written by his fiancee to someone at the Department of Corrections dated July 17, 2013. That letter states that Plaintiff Lowe fears for his safety at FCDC. She states, "There has been a lot of different things going on down there that he fears for his safety and wanted me to get this information into the right hands. . . . Different ones from that facility have already been making threats to him." Also attached is an inmate memorandum from Plaintiff Lowe on which he wrote "EMERGENCY" at the top. He stated that he was "having problems with a couple guys in

RC3[.]" He also states that "there is also racism going on in this cell block where whites outnumber 4 to 1 . . . I'm requesting to be moved to another cell . . . before a altercation arise. Threats have been made."

Plaintiff Russell sues Sgt. Ward at Blackburn Correctional Complex, FCDC Captain Daniel Thomas, and FCDC Nurse Sheila Peek in their official capacities. He states that he injured his neck and back on March 1, 2013, while housed at Blackburn Correctional Complex. He states that he was given an x-ray, Flexaril, Naprosyn, and muscle rub. Shortly thereafter he was transferred to several facilities and then to FCDC on April 22, 2013. He states that he was not able to see the medical unit at FCDC until around May 20, 2013. He states that he was told by Nurse Peek that he would have to wait to see the doctor until his medical records were received from Blackburn and that he was placed in the work dorm. Plaintiff Russell alleges that on June 5, 2013, Defendant Thomas asked him why he was not working. Plaintiff Russell replied that he was still in pain and was waiting for his medical records to arrive before he could see a doctor. Plaintiff Russell states that two days later Defendant Thomas asked him the same question and then told him he was going to place him in isolation for not working. He states that on or about June 10, 2013, Defendant Thomas again visited him in the work dorm and told him he was "faking and not trying to work. At that time he again told me to pack my things cause he was placing me in isolation."

Plaintiff Russell states that on or about August 15, 2013, he asked to see the doctor because his pain was getting worse. He alleges that Nurse Peek told him that she now had his medical records but that the doctor was not going to see him nor would he be given an MRI because "she doesn't feel that I need one. Also to stop coming to medical because they can not

3

do anything for me." He states that he was charged $25 for each visit for trying to see the doctor. Plaintiff Russell alleges his civil rights have been violated because he has not been given proper medical treatment. He asks for monetary and punitive damages and injunctive relief.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1) and (2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. When determining whether a plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in a light most favorable to Plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**A.    Plaintiff Lowe's claims**

   *1.    Claim regarding being forced to work*

Plaintiff Lowe has not alleged any physical injury related to being forced to work several jobs. "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other

4

correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ." 42 U.S.C. § 1997e(e). "[A] violation of a federally secured right is remediable in damages only upon proof that the violation proximately caused injury." *Horn by Parks v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 659 (6th Cir. 1994); *see also Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 305-08 (1986). Accordingly, Plaintiff's claim for damages based on being forced to work where no physical injury is alleged fails. *See Stachura*, 477 U.S. at 307-08 (noting that under § 1983 there can be no compensatory damages absent physical injury).

      2.     *Claim regarding risky environment*

Plaintiff Lowe also does not allege that he suffered any physical injury in connection with the other inmates' threats. Under the Eighth Amendment, "[p]rison officials have an affirmative duty to protect inmates from violence perpetrated by other prisoners." *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998). "Nevertheless, not all injuries suffered by an inmate at the hands of another prisoner result in constitutional liability for prison officials under the Eighth Amendment." *Id.* The Sixth Circuit has held that an Eighth Amendment claim for monetary damages requires an inmate to plead and prove that he suffered some non-*de minimis* physical injury. *Id.* at 600-01 (finding that complaint failed to state an Eighth Amendment claim where "plaintiff primarily request[ed] monetary relief . . . in the form of compensatory and punitive damages" but complaint contained no allegations that inmates who threatened the plaintiff "actually injured him physically"); *Wells v. Jefferson Cnty. Sheriff Dep't*, 159 F. Supp. 2d 1002, 1010 (S.D. Ohio 2001) (finding failure-to-protect claim failed because plaintiff did not plead that he suffered any physical injury); *Bristow v. Eleby*, No. 2:08-cv-0250, 2008 WL

5

3414132, at *3 (S.D. Ohio Aug. 8, 2008) (holding, where plaintiff-inmate had "not alleged that he suffered an actual assault by [another] inmate . . . or any other member of the Aryan Brotherhood as a result of defendant [officer's] failure to protect him," that the complaint failed to state a claim for monetary damages against the defendant-officer). Therefore, Plaintiff's claims for monetary damages in connection with his failure-to-protect claims will be dismissed for failure to state a claim upon which relief may be granted.

Inasmuch as Plaintiff Lowe also asked for injunctive relief in the form of being transferred to another facility, since filing his complaint, Plaintiff Lowe has notified the Court that he has been transferred to the Marshall County Jail. Consequently, his request for injunctive relief is moot. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

       *3.      Claim regarding verbal harassment*

Plaintiff Lowe alleges that one morning Officer Fair woke him by yelling at him to get ready to go to isolation if Plaintiff could not explain where missing mop heads were and that two days later Officer Fair nearly tipped over Plaintiff's laundry cart and then said "'f_ck your laundry!'" First, Officer Fair is not a named Defendant in this action. However, even if he were, Plaintiff's allegations do not state a constitutional claim. Verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) (per curiam); *see Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) ("Johnson's allegation that Ward made an offensive sexual remark to him does not rise to the level of a constitutional violation [as such is merely verbal abuse]."); *see also Searcy v. Gardner*, No. 3:07-0361, 2008 WL 400424, at *4 (M.D. Tenn. Feb. 11, 2008) ("A claim under 42 U.S.C. § 1983 cannot be based on mere threats, abusive language, racial slurs, or

6

verbal harassment by prison officials."). This claim will be dismissed for failure to state a claim.

**B.      Plaintiff Russell's claim**

Plaintiff Russell alleges that he has not been given proper medical treatment for his back injury. He alleges that he is in pain and needs to see the doctor.

The Eighth Amendment to the U.S. Constitution protects against cruel and unusual punishment of prisoners, including denial of or inadequate medical care. To establish an Eighth Amendment violation premised on inadequate medical care, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002). Thus, to state a cognizable claim, a prisoner must show that the official "acted or failed to act despite his knowledge of a substantial risk of serious harm" to the inmate. *Terrance*, 286 F.3d at 843 (quoting *Farmer*, 511 U.S. at 842). Less flagrant conduct, however, may still evince deliberate indifference where there is "a showing of grossly inadequate care as well as a decision to take an easier but less efficacious course of treatment." *Id.* (quoting *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)). Such grossly inadequate care is "medical treatment 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* at 844 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

A difference of opinion between the inmate and the prison medical official(s) concerning diagnosis or treatment does not constitute a constitutional violation. *Estelle*, 429 U.S. at 107. Nor does negligent medical care constitute a constitutional violation without deliberate

indifference resulting in substantial harm. *Id.* at 106; *Johnson v. Leonelli*, No. 99-6220, 2000 WL 1434767, at *1 (6th Cir. Sept. 19, 2000). Further, the courts make a distinction between cases in which there is a complete denial of medical care and those where the claim is one of inadequate medical treatment. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*

According to his complaint, at the time he injured his neck and back on March 1, 2013, Plaintiff Russell was given an x-ray, Flexaril, Naprosyn, and muscle rub. He complains that after he was transferred to FCDC his complaints of pain and requests to have an MRI were not met. However, he states that Nurse Peek told him that he would not receive an MRI because, in her opinion, after reviewing his medical records, he did not need one. Thus, Plaintiff Russell's complaints evidence a disagreement with Nurse Peek's assessment of his medical condition. As such, it does not rise to the level of a constitutional claim. *See Estelle*, 429 U.S. at 107. Therefore, the Court will dismiss Plaintiff Russell's complaint for failure to state a claim. *See Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 357 (6th Cir. 2006) (affirming dismissal by district court for failure to state a claim for deliberate indifference to serious medical needs where prisoner's allegation only evidenced a disagreement with treatment).

To the extent that Plaintiff is alleging that the jail's medical care delivery system's fee requirement is unconstitutional, the Sixth Circuit has determined otherwise. *Bailey v. Carter*, 15 F. App'x 245 (6th Cir. July 20, 2001) (holding that a state statute requiring inmates to pay a modest fee for medical services did not violate the Constitution). Thus, Plaintiff Russell also

fails to state a claim regarding his allegation that he was charged when he requested medical services.

### III. CONCLUSION

For the foregoing reasons, the Court will by separate Order dismiss Plaintiffs' claims.

Date:


cc: Plaintiff, *pro se*
      Defendants
      Fulton County Attorney
4413.009